Commonwealth *v.* Brown, Appellant.

22

Submitted April 20, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Gerald L. Bowen,* and *Eagan and Bowen,* for appellant.

*Stewart J. Greenleaf* and *Paul W. Tressler,* Assistant District Attorneys, *Parker H. Wilson,* First Assistant District Attorney, and *Milton O. Moss,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE BELL, March 25, 1971:

On April 16, 1964, defendant-appellant David M. Brown, along with his codefendants Daniel Patrick O'Neill and Michael F. McCaffrey, agreed to rob an

establishment for the alleged purpose of obtaining money for their rent. At approximately 7:30 P.M., the three young men left O'Neill's apartment in Lacey Park, Warminster, and drove a short distance to Montgomeryville, where McCaffrey purchased a box of .38-caliber bullets to be used in O'Neill's revolver. Brown and O'Neill purchased a pair of dark gray stockings to be used to cover their faces during the robbery. They then drove to Willow Grove, intending to rob the Seven Eleven grocery store. Upon arriving at the Seven Eleven store, they decided not to rob the store because of a high fence adjacent to the store which would have impeded their flight and the presence of several patrons in the store. Brown and his codefendants then proceeded to the nearby town of Glenside at approximately 9 P.M., where they drove past the delicatessen owned by Eugene Jordan. They noticed that Jordan was alone in the store, and drove slowly past the store two more times before they stopped and parked in front of it. O'Neill and Brown placed the stockings over their heads and entered the store, while McCaffrey waited outside with the automobile's engine running. O'Neill had a revolver in his possession and Brown had a billy-club with him as they entered the store. O'Neill told Jordan that they intended to rob him, whereupon Jordan attempted to pull the stocking off O'Neill's head. O'Neill fired the revolver three times at point-blank range into Jordan, which naturally caused his death.

O'Neill and Brown ran out to the waiting automobile and the three men sped off to O'Neill's apartment. Later that evening, O'Neill hid the murder revolver in an abandoned automobile near his apartment. The revolver was found the next morning by a child playing in the automobile and was turned over to the police, who determined after a ballistics test that it was the murder weapon.

The following morning, police from Horsham and Warminster Townships obtained a search warrant for O'Neill's apartment arising out of a wholly independent investigation of a burglary in Horsham Township. A search was made and O'Neill and Brown (who was living with O'Neill at that time) were arrested and first taken to the Warminster police station. They were later taken to Horsham Township for further investigation concerning several burglaries in that area. At approximately 7 P.M., Brown and O'Neill came under suspicion for the murder of Jordan and were taken to the office of the Montgomery County District Attorney in Norristown. Two hours later, both appellant Brown and O'Neill signed confessions detailing their participation in the murder-robbery of Jordan.

Two highly respected members of the Bar were appointed to represent appellant. On April 19, 1965, appellant entered a plea of guilty before President Judge FORREST and Judge DITTER, and after a two-day hearing he was found guilty of first-degree murder and sentenced to life imprisonment.* Thereafter, appellant had counsel appointed for a Post Conviction Hearing Act hearing which was held on July 26, 1966. The relief requested, which included four of the present grounds and was basically although not identically the same, was denied. On January 8, 1969, a second P.C.H.A. petition was filed and counsel was again appointed. The lower Court denied his petition but found that appellant had not been informed of his right to appeal from the original judgment of sentence, and granted him the right to appeal as if timely filed. This appeal was taken pursuant to the lower Court's finding and Order.

---

* The guilty plea was to separate (strangely worded) bills of indictment of murder, robbery, robbery—being armed with an offensive weapon, robbery—together with other persons, burglary and conspiracy to commit robbery while armed with an offensive weapon.

Appellant alleges that his guilty plea was not voluntarily and intelligently entered because it was based on (1) an illegal arrest, (2) a coerced confession, and (3) his incompetence at the time of trial. Appellant contends that these three reasons establish that his plea was not voluntarily and intelligently made and that the burden of proof now rests on the Commonwealth to prove otherwise. Appellant cites for this proposition *Boykin v. Alabama,* 395 U.S. 238; *Commonwealth ex rel. West v. Rundle,* 428 Pa. 102, 237 A. 2d 196; and Pa. R. Crim. P. 319(a). We disagree.

In *Commonwealth ex rel. West v. Rundle,* 428 Pa., supra, we held that henceforth in Pennsylvania it should be the practice that an on-the-record examination of the defendant be conducted by the lower Court to determine if the plea was voluntarily, knowingly and intelligently entered. *Boykin v. Alabama,* 395 U.S., supra, made what had already been the law in Pennsylvania after *West* and Pa. R. Crim. P. 319(a) into a Federal Constitutional dimension—to wit, there must be an on-the-record examination by the lower Court to determine if the guilty plea was properly entered.* Since *Boykin* was not made retroactive, *Commonwealth v. Godfrey,* 434 Pa. 532, 254 A. 2d 923, and the guilty plea was entered prior to the decision in *West,* appellant has the burden of proving that his guilty plea was *not* voluntarily, knowingly and intelligently made. *Commonwealth v. Martin,* 442 Pa. 41, 272 A. 2d 169 (1971); *Commonwealth v. Enty,* 442 Pa. 39, 271 A. 2d 926 (1971); *Commonwealth v. McBride,* 440 Pa. 81, 269 A. 2d 737; *Commonwealth v. Knowles,* 440 Pa. 84, 269 A. 2d 739.

In the light of these principles and decisions, we shall examine the instant case to determine whether

---

* Pa. R. Crim. P. 319(a) was amended, shortly after *West* was handed down, to require an on-the-record examination. See Comment, Rule 319(a).

appellant has met his burden of proof to have his guilty plea vacated and a new trial granted.

In *Commonwealth v. Marsh,* 440 Pa. 590, 271 A. 2d 481, our Court adopted the rationale and standards which were established in two recent United States Supreme Court decisions: *McMann v. Richardson,* 397 U.S. 759; and *Parker v. North Carolina,* 397 U.S. 790. We set forth three criteria which a defendant must meet before he can successfully attack a guilty plea because of an allegedly involuntary or coerced confession. We pertinently said (pages 593-594): "The United States Supreme Court there held that a defendant must demonstrate *all**  of the following to successfully collaterally attack a plea of guilty on such grounds: (1) an involuntary pretrial confession (or presumably any other constitutionally infirm incriminating evidence); (2) that the guilty plea was primarily motivated by such evidence; and, (3) that defendant was incompetently advised by counsel to plead guilty, in the circumstances, rather than stand trial. . . .

"In speaking of what constitutes incompetent advice by counsel, the Court in McMann, supra, stated that the showing of a mere miscalculation of otherwise competent counsel in assessing the admissibility of evidence by means which may not have conformed with constitutionally-required standards is not sufficient to establish that the plea was not intelligently and knowingly entered. There must be a showing of gross error on the part of counsel. As long as the advice rendered was within the ambit of that which could reasonably be given by counsel in a criminal case in the circumstances, there is no showing of 'incompetent' counsel."

Appellant, we repeat, was represented at his trial by two highly respected Court-appointed trial attorneys. They were faced with the possibility of going to trial

---

\* Italics in *Commonwealth v. Marsh.*

on a felony-murder indictment, with two codefendants who had given written confessions.* Furthermore, it was understood by appellant's trial counsel that codefendant McCaffrey was going to plead guilty and would act as a Commonwealth witness. Moreover, appellant personally wrote a letter to the District Attorney's Office, indicating his desire to plead guilty. In addition, at the P.C.H.A. hearing, appellant's two attorneys testified that they advised him of the felony-murder rule, the differences between second- and first-degree murder, his right to jury trial, and a "general nature of the way a trial works—confrontation of witnesses and right to cross-examine." However, they did not advise him of his right to appeal.

From a searching examination of the record, we can find no indication of "gross error on the part of counsel," and, on the contrary, we find that counsel's advice to plead guilty was reasonable under the circumstances. See also *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A. 2d 349; *Commonwealth v. Woody*, 440 Pa. 569, 271 A. 2d 477; *Commonwealth v. Skipper*, 440 Pa. 576, 271 A. 2d 476.

Appellant next contends that his guilty plea was invalid because he was incompetent prior to and at the time the plea was entered. In *Commonwealth ex rel. Hilberry v. Maroney*, 424 Pa. 493, 227 A. 2d 159, we said (page 495) : "And the test to be applied in determining the legal sufficiency of his mental capacity to stand trial, or enter a plea at the time involved, is not the M'Naghten 'right or wrong' test, but rather his ability to comprehend his position as one accused of murder and to cooperate with his counsel in making a

---

* The confession of codefendant O'Neill, which was given under identical circumstances to appellant's confession, was challenged in a pretrial suppression hearing, and the motion to suppress was denied.

rational defense. See Commonwealth v. Moon, supra, and Commonwealth ex rel. Hilberry v. Maroney, supra, at 544. Or stated another way, did he have sufficient ability at the pertinent time to consult with his lawyers with a reasonable degree of rational understanding, and have a rational as well as a factual understanding of the proceedings against him. See Dusky v. United States, 362 U.S. 402 (1960)." See also *Commonwealth v. Savage*, 433 Pa. 96, 249 A. 2d 304; *Commonwealth v. Harris*, 431 Pa. 114, 243 A. 2d 408.

Appellant urges consideration of several factors to establish his incompetence: (1) his age—he was 19 years old, (2) he was committed to a State mental institution 19 months *after* his plea was entered and the judgment of sentence made, and (3) his relationship with respect to his family and Society as an adolescent. Appellant never raised this issue at the time of trial, nor does he now point to any part of the record to sustain his contention. We have made a complete and independent examination of the record with these alleged factors in mind, as we did in *Hilberry* (supra), and conclude that appellant had a rational understanding of the charges involved, the plea and sentencing proceedings, and did cooperate in a rational manner in assisting his attorneys at all times prior to and during the trial.

Appellant's contention that the guilty plea should be invalidated because of an allegedly illegal arrest is without merit. In *Commonwealth v. Culbreath*, 439 Pa. 21, 264 A. 2d 643, the Court said (page 26): "Moreover, ' "A plea of guilty, knowingly made, constitutes an admission of guilt and is a waiver of all nonjurisdictional defects and defenses." Commonwealth v. Garrett, 425 Pa. 594, 597, 229 A. 2d 922, 924 (1967); Commonwealth ex rel. Foeman v. Maroney, 420 Pa. 486, 218 A. 2d 230 (1966); Commonwealth ex rel. Walls v. Run-

dle, 414 Pa. 53, 198 A. 2d 528 (1964).' Commonwealth v. Hill, 427 Pa. 614, 617, 235 A. 2d 347."

We find no merit in any of appellant's contentions. Judgment of sentence affirmed.

Mr. Justice COHEN took no part in the decision of this case.